IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REBECCA SUSSMAN, <br> 2201 L St. NW Apt. 203 <br> Washington, D.C. 20037 <br><br> Plaintiff <br><br> v. <br><br> AXONIUS, INC., AXONIUS FEDERAL SYSTEMS, LLC <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No: 23-1822 <br> ) <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

1. Plaintiff Rebecca Sussman was unlawfully terminated by her employers, Defendants Axonius, Inc. ("Axonius") and Axonius Federal Systems, LLC ("AFS"), just one day after she notified them that she was exercising her protected right to take family and medical leave, and mere weeks after she complained internally about unlawful discrimination on the basis of sex. Ms. Sussman's unlawful termination followed on the heels of years in which Defendants intentionally deprived her of equal pay for equal work performed by employees of the opposite sex.

2. Plaintiff brings this action against Defendants for damages based on the denial and violation of her rights under the federal Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the District of Columbia Family Medical Leave Act ("DCFMLA"), D.C. Code § 32-501 *et seq.*; the District of Columbia Universal Paid Family Leave Amendment Act ("DC Paid Leave Act"), D.C. Code § 32-541.01 *et seq.*; the District of Columbia Human

1

Rights Act ("DCHRA"), D.C. Code §§ 2-1402.11 *et seq.* and D.C. Code § 2-1402.61 *et seq.*; and the federal Equal Pay Act, 29 U.S.C. §206(d).

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff brings claims under the federal FMLA and Equal Pay Act that present federal questions over which this Court has jurisdiction.

4. This Court has diversity and supplemental jurisdiction over Plaintiff's DCFMLA, DC Paid Leave Act, and DCHRA claims pursuant to 28 U.S.C. §§ 1332 and 1367. The amount in controversy in this case exceeds $75,000.

5. Venue is proper under 28 U.S.C. § 1391(b)(2) in the District of Columbia, where Plaintiff worked when employed by Defendants, and because the acts of interference, retaliation, discrimination, and unequal pay arose out of Plaintiff's employment by Defendants in the District of Columbia and occurred in the District of Columbia.

## PARTIES

6. Plaintiff Rebecca Sussman is a resident of the District of Columbia.

7. Defendant Axonius, Inc. ("Axonius") is a for-profit corporation incorporated in Delaware and headquartered in New York, NY and Tel Aviv, Israel. Axonius is a cybersecurity asset management company.

8. Defendant Axonius Federal Systems, LLC ("AFS") is a limited liability company formed in Delaware and whose principal office is in Maryland. AFS is a wholly owned subsidiary of Axonius that focuses on soliciting federal government business and contracts.

9. Axonius lists the District of Columbia as one of its five locations, employs numerous employees who work in the District of Columbia, regularly advertises job openings in the District of Columbia, and pays payroll taxes to the District of Columbia.

10. Defendants regularly communicated with Plaintiff in the District of Columbia through phone calls, emails, and virtual meetings, assigned her work to perform in the District of Columbia, and directed the work that she performed in the District of Columbia.

11. Defendants actively supported and enabled Plaintiff's remote work for Defendants from the District of Columbia, including by sending Plaintiff a laptop, laptop chargers, keyboard, mouse, headset, and extra monitor for her home office; offering to reimburse Plaintiff's internet and cell phone expenses; reimbursing Plaintiff for hotels, train fare, and other travel expenses for her travel from the District of Columbia to headquarters to attend internal meetings for legal personnel; and hosting a local holiday party just for all of Defendants' staff in the District of Columbia area.

12. Defendants regularly conduct business and business events in the District of Columbia and actively pursue and solicit business with federal government agencies in the District of Columbia.

13. Plaintiff was employed by Axonius from September 14, 2020 and jointly employed by Axonius and AFS from May 2021 until her termination on February 14 2023.

14. At the time of her termination, Plaintiff worked full-time and remotely for Defendants from her home office in the District of Columbia.

15. Defendants were well aware of that Plaintiff was performing services for Defendants from her District of Columbia residence because such address was listed on her paystubs and the proposed severance agreement Axonius offered her.

3

## FACTUAL ALLEGATIONS

**Background**

16. Ms. Sussman was hired by Axonius on September 14, 2020 as a full-time Associate Corporate Counsel after graduating from Emory University School of Law in 2016 and working as in-house counsel at a start-up company for four years.

17. Ms. Sussman's supervisor was Edy Glozman, VP Legal.

18. Ms. Sussman reported to and received assignments from Axonius' headquarters office in New York, NY.

19. Ms. Sussman was approved to work remotely, initially from her home office in Virginia. When she moved to the District of Columbia in September 2021, she notified Axonius and was allowed to keep working remotely from the District of Columbia.

20. Ms. Sussman was a highly valued employee. She was charged with developing, negotiating, and overseeing some of Defendants' most important agreements, implementing legal strategies to protect Defendants' assets and trade secrets, and providing legal advice to Defendants' security and marketing teams.

21. Ms. Sussman's work actively contributed to Axonius' growth. She was the second lawyer hired, at a time when Axonius had fewer than 100 employees. Ms. Sussman trained numerous subsequent lawyers hired by Axonius, including most of its current legal team. During her tenure, Axonius expanded to close to 2,000 employees and several subsidiaries, including AFS.

22. In or around April 2022, approximately a year and a half after she was hired, Ms. Sussman was given the title of Data Protection Counsel and given even greater responsibility.

Ms. Sussman's title change was not reflected in Defendants' internal communications as a promotion and no salary increase accompanied the new title.

**Joint and Integrated Employment**

23. Plaintiff's work and working conditions were controlled by both Axonius and AFS. Ms. Sussman simultaneously performed services for, at the direction of, under the supervision and control of, and for the benefit of both Axonius and AFS.

24. Axonius CEO Dean Sysman formed AFS. During the period of Ms. Sussman's employment, AFS did not have its own separate CEO. Instead, Sysman controlled both Defendants.

25. The operations of Axonius and AFS are interrelated. During the period of Ms. Sussman's employment. AFS did not have its own legal, finance, or human resources staff. AFS had a skeletal staff for sales and customer support. AFS used Axonius' legal, finance, and human resources staff as its own, including for human resources functions of managing employees.

26. The products that AFS offers and contracts with federal government entities to provide are owned by Axonius.

27. Axonius and AFS had an arrangement to share the services of Axonius' legal department, including the services of Ms. Sussman. Both Axonius and AFS assigned work to Ms. Sussman through Zendesk, an online ticketing system. Ms. Sussman worked both on Zendesk tickets that listed AFS as the owner and tickets that listed Axonius as the owner. AFS employees also contacted Ms. Sussman or her supervisor, Mr. Glozman, directly to assign her legal work. Ms. Sussman performed work assigned by both Axonius and AFS.

28. Axonius and AFS acted directly or indirectly in the interest of the other employer in relation to Plaintiff's employment.

5

29. Upon information and belief, AFS, as a wholly owned subsidiary of Axonius, is controlled by, or is under common control with Axonius.

**Pay Discrimination and Disparate Treatment**

30. When Ms. Sussman was hired in September 2020 as an Associate Corporate Counsel, her salary was $160,000/year.

31. As Associate Corporate Counsel, Ms. Sussman's duties included reviewing, drafting, and negotiating a wide variety of commercial agreements and legal documents, including end-user license agreements, master services agreements, data processing agreements, and nondisclosure agreements, and providing legal support to the Sales, Customer Success, Product, and other teams.

32. In or around February 2021, Defendants hired L.G., a 2017 graduate from Notre Dame Law School, as Associate Corporate Counsel, reporting to Mr. Glozman.

33. In or around March 2021, Defendants hired B.W., a 2018 graduate from University of Pennsylvania Carey Law School, as Associate Corporate Counsel, reporting to Mr. Glozman.

34. Ms. Sussman trained L.G. and B.W. after they were hired.

35. L.G. and B.W. are both males.

36. After Ms. Sussman was terminated, she learned from a senior management official that Ms. Sussman was paid less than L.G. and B.W. for the duration of the time that all three of them held the same job title of Associate Corporate Counsel.

37. Ms. Sussman is equally as qualified as L.G. and B.W., if not more qualified. B.W., who graduated law school in 2018, and L.G., who graduated law school in 2017, had less

6

legal work experience than Ms. Sussman, who graduated law school 2016. Further, Ms. Sussman had more years of work experience with Defendants.

38. When they all held the title of Associate Corporate Counsel, L.G. and B.W. performed the same duties as those performed by Ms. Sussman. They all received work through Zendesk, a ticketing system, where Defendants' employees submitted tickets asking for legal's input or help on various matters. This included tickets submitted by Defendants' staff on its Marketing, IT, Security, People, and Sales teams. The entire legal team would see an open ticket, which anyone on the team could grab and then take on that corresponding assignment.

39. During this period when they all held the title of Associate Corporate Counsel, Ms. Sussman, L.G., and B.W.'s work required equal skill, effort, and responsibility, and was performed under similar working conditions. They all worked as a team and collaborated.

40. Despite holding the same title as Ms. Sussman and performing the same duties as Ms. Sussman, L.G. and B.W. were paid more than Ms. Sussman since their hiring.

41. In September 2021, Ms. Sussman was given a merit-based raise to $168,000 per year.

42. In or around April 2022, L.G. and B.W. were both promoted to Corporate Counsel—i.e., around the same time Ms. Sussman was given the title of Data Protection Counsel.

43. Mr. Glozman announced L.G. and B.W.'s promotions to the entire company at an all-hands meeting. However, despite Ms. Sussman's requests that he do so, Mr. Glozman did not announce her title change as a promotion to the company.

7

44. Pursuant to his promotion, L.G. became a manager and was given a team to supervise. Upon information and belief, L.G. continued to receive greater compensation than Ms. Sussman.

45. Pursuant to his promotion, B.W. was given director-level stock options. Upon information and belief, B.W. continued to receive greater compensation than Ms. Sussman.

46. Ms. Sussman was not given a team to supervise. Nor was she offered director-level stock options or commensurate compensation.

**Protected Complaints about and Opposition to Unlawful Discrimination**

47. Ms. Sussman made internal complaints about unlawful sex discrimination that she witnessed and experienced at Axonius.

48. Among other things, Ms. Sussman highlighted unequal treatment on a company slack channel called Womxn at Axonius. She also vocalized to the human resources staff (the People team) that it was alarming to see a slide at an all-hands meeting that nearly all promotions went to men.

49. Then, in or around December 2022, Ms. Sussman complained directly to Axonius CEO Dean Sysman and Chief People Officer Nurit Shiber about the fact that qualified women were denied promotions in favor of men. She made clear her opposition to unlawful discrimination on the basis of sex. No action was taken to redress Ms. Sussman's complaints.

50. Axonius leadership was well aware that there was a problem with how women were treated at the company. Discriminatory behavior that demeaned women was permitted.

51. At the Axonius Global Retreat in Athens, Greece in May 2022, Mr. Glozman and numerous members of the legal team witnessed a senior member of the Finance team ask to suck

8

on Ms. Sussman's toes. No disciplinary measures were taken against the harasser, who is still employed at Axonius.

52. In another instance, an employee shared a pornographic cartoon on one of the Defendants' slack channels. The employee was not terminated.

53. In yet another, during a presentation at an all-hands meeting, a senior member of the sales team referred to a female client in demeaning terms.

**Unlawful Interference and Retaliatory Termination**

54. In or around the week of December 12, 2022, Ms. Sussman learned that her mother had been diagnosed with stage four metastatic breast cancer and needed immediate and continuous medical treatment, including chemotherapy, from a medical provider.

55. Ms. Sussman's father had died earlier that year and Ms. Sussman's mother now lived alone. Ms. Sussman needed to actively care for her mother during her medical treatment.

56. Ms. Sussman shared all this information with her supervisor, Mr. Glozman.

57. Shortly thereafter, in or around late December 2022 or early January 2023, Ms. Sussman contacted the People Team, which handles human resources for Axonius and AFS, to discuss her options for taking family and medical leave to care for her mother, take her mother to chemotherapy appointments, and help her mother recover after chemotherapy.

58. The People Team staff, including Angela Chiarenza, Director of Learning and Development, and Alecia Barnett, People Partner, pushed back against Ms. Sussman using any kind of family and medical leave. They discouraged her from applying for family and medical leave and urged her to use her accrued sick leave or vacation time instead.

59. In or around the middle of January 2023, Ms. Sussman contacted the People Team again to inform them that relying on sporadic sick and vacation leave to provide all of the

9

ongoing care that her mother required was proving to be difficult. She explained that she was interested in taking intermittent family and medical leave every Monday pursuant to the D.C. Paid Leave Act.

60. The People Team instructed Ms. Sussman to let them know when she filed a claim for leave under the D.C. Paid Leave Act.

61. On Friday, February 10, 2023, Ms. Sussman informed Mr. Glozman that she would be filing a claim under the D.C. Paid Leave Act over the weekend.

62. On Sunday, February 12, 2023, Ms. Sussman filed a claim under the D.C. Paid Leave Act with the District of Columbia Office of Paid Family Leave.

63. On Monday, February 13, 2023, Ms. Sussman notified the People Team that she had filed her claim under the D.C. Paid Leave Act.

64. The next day, February 14, 2023, Axonius notified Ms. Sussman that she was terminated, effective immediately, and promptly shut off her access to her work email and other work systems.

65. A few weeks later, Axonius posted a job posting for her position as Data Protection Counsel reflecting the same job duties that Ms. Sussman performed.

**Damages**

66. As a direct and proximate cause of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer lost earnings and fringe benefits, and other economic and non-economic benefits as a result of her unlawful termination on February 14, 2023.

67. As a direct and proximate cause of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer lost earnings and fringe benefits, and other economic and non-economic benefits she would have received if she had been paid the same wages and benefits,

including stock options, salary increases, and cost-of-living increases, throughout her employment as similarly-situated male co-workers performing the same duties in the same job title.

68. Plaintiff was unlawfully deprived of equal pay and promotional opportunities based on her sex and has suffered lost wages and benefits, along with interest.

69. Plaintiff was unlawfully terminated for exercising her rights to family and medical leave and has suffered lost wages and benefits, along with interest.

70. As a direct and proximate cause of Defendants' unlawful actions, Ms. Sussman has suffered and continues to suffer severe emotional distress, loss of enjoyment of life, loss of reputation, pain and suffering, embarrassment, humiliation, indignity and inconvenience, and other non-economic damages.

71. Plaintiff has been forced to incur liability for attorney fees and costs.

## COUNT ONE

**(Unlawful Interference in Violation of the Federal FMLA)**

72. Plaintiff realleges and incorporates by reference the preceding allegations.

73. Under the federal FMLA, an "eligible employee" is entitled to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons. 29 U.S.C. § 2612(a)(1).

74. An "eligible employee" under the federal FMLA is a person "who has been employed for at least 12 months by the employer with respect to whom leave is requested…for at least 1,250 hours of service with such employer during the previous 12-month period, [and] is employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite." 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a) (brackets added).

75. At all times relevant to this Complaint, Plaintiff was an "eligible employee."

76. At the time Plaintiff requested to take family and medical leave under the FMLA, she had worked full-time and continuously for Defendants for at least twelve months and had at least 1,250 hours of service with Defendants during the 12-month period preceding the commencement of leave.

77. Plaintiff worked from home in the District of Columbia, but she reported to and received assignments from the New York, NY headquarters of Axonius, which was her worksite under 29 C.F.R. § 825.111(a)(2). Upon information and belief, Axonius employed 50 or more employees within 75 miles of that worksite. In addition, Defendants collectively employed 50 or more employees within 75 miles of that worksite.

78. At all times relevant to this Complaint, Defendants were employers covered by the FMLA. 29 U.S.C. § 2611(4); 29 C.F.R. § 825.104(a).

79. Defendants jointly employed Plaintiff. 29 C.F.R. § 825.106.

80. Defendants had an arrangement to share the services of Axonius' legal department, including Plaintiff's services. Plaintiff performed work assigned by and for the benefit of both Defendants. Upon information and belief, Defendant AFS is controlled by, or is under common control with Defendant Axonius.

81. Alternatively, Defendants constitute an integrated employer of Plaintiff. 29 C.F.R. § 825.104(c)(2).

82. Defendants share common management under Axonius CEO Dean Sysman, an interrelation of operations for all finance, legal, and human resources functions, and centralized control of labor relations by Axonius' People Team. Further, Defendants common ownership and financial control with AFS as the wholly owned subsidiary of Axonius.

83. Defendants are cybersecurity companies engaged in commerce or in an industry of activity affecting commerce and employed over 50 employees during each of 20 or more calendar workweeks in the relevant calendar year.

84. A "serious health condition" is defined as an "illness, injury, impairment, or physical or mental condition that involves inpatient care…or continuing treatment by a health care provider." 29 U.S.C. § 2611(11); 29 C.F.R. § 825.115(e).

85. Plaintiff's mother had a "serious health condition" as defined in the FMLA. In December 2022, Plaintiff's mother became seriously ill and was diagnosed with stage four metastatic breast cancer, an illness that incapacitated her for more than three consecutive full calendar days and required chemotherapy and continuing treatment by a health care provider.

86. Because her parent had a "serious health condition," Plaintiff was entitled to a total of twelve weeks of job-protected leave during any twelve-month period in order to care for her parent under the federal FMLA. 29 U.S.C. § 2612(a)(1)(C); 29 C.F.R. § 825.201(a).

87. Defendants unlawfully interfered with, restrained, or denied Plaintiff's exercise of or her attempt to exercise her right to leave under the FMLA in violation of 29 U.S.C. § 2615(a) and 29 C.F.R. § 825.220 by discouraging her from invoking her FMLA rights and terminating her immediately upon notice of FMLA leave.

## COUNT TWO

**(Unlawful Interference in Violation of the DCFMLA)**

88. Plaintiff realleges and incorporates by reference the preceding allegations.

89. Under the DCFMLA, an eligible employee is entitled to take up to sixteen weeks of family leave in any 24-month period for qualifying medical or family reasons. D.C. Code § 32-502(a).

90. An eligible "employee" under the DCFMLA is a person who has been employed by the same employer for at least twelve months and has worked at least 1,000 hours during the 12-month period immediately preceding the request for leave. D.C. Code § 32-501(1)(A).

91. At all times relevant to this Complaint, Plaintiff was an "employee" covered by the DCFMLA.

92. At the time Plaintiff requested to take family and medical leave under the DCFMLA, she had worked full-time and continuously for Defendants for at least twelve consecutive months.

93. Plaintiff had worked at least 1,000 hours for Defendants during the 12-month period preceding the date on which leave was to commence.

94. At all times relevant to this Complaint, Defendants were "employers" as defined in D.C. Code § 32-501(2). Defendants used the services of Plaintiff for pay in the District of Columbia.

95. Upon information and belief, Defendants employed 20 or more persons in the District.

96. An employee may take up to 16 weeks of leave during any 24-month period in order to care for a parent of the employee who has a "serious health condition." D.C. Code § 32-501(4) (defining "Family member"); DC Code § 32-502(a)(4).

97. A "serious health condition" is a "physical or mental illness, injury or impairment" that involves "[i]npatient care in a hospital, hospice or residential health care facility" or "[c]ontinuing treatment or supervision at home by a health care provider." D.C. Code § 32-501(9).

98. Plaintiff's mother had a "serious health condition" as defined in the DCFMLA. In December 2022, Plaintiff's mother became seriously ill and was diagnosed with stage four metastatic breast cancer, an illness that required chemotherapy and continuing treatment by a health care provider.

99. Defendants unlawfully interfered with, restrained, or denied Plaintiff's exercise of or her attempt to exercise her right to leave under the DCFMLA in violation of D.C. Code § 32-507(a) by discouraging her from invoking her DCFMLA rights and terminating her immediately upon notice of DCFMLA leave.

## COUNT THREE

### (Unlawful Retaliation in Violation of the Federal FMLA)

100. Plaintiff realleges and incorporates by reference the preceding allegations.

101. Defendants unlawfully discharged Plaintiff in violation of 29 U.S.C. § 2615 and 29 C.F.R. § 825.220 when she exercised or attempted to exercise her right to take leave protected by the federal FMLA.

## COUNT FOUR

### (Unlawful Retaliation in Violation of the DCFMLA)

102. Plaintiff realleges and incorporates by reference the preceding allegations.

103. Defendants unlawfully discharged Plaintiff in violation of D.C Code § 32-507(b) when she exercised or attempted to exercise her right to take leave protected by the DCFMLA.

## **COUNT FIVE**

**(Unlawful Interference in Violation of the DC Paid Leave Act)**

104. Plaintiff realleges and incorporates by reference the preceding allegations.

105. At all times relevant to the Complaint, Plaintiff was a "covered employee" as defined in D.C. Code § 32-541.01(3).

106. Plaintiff's employment for Defendants was based in the District of Columbia, and she spent more than 50% of her work time for Defendants working in the District of Columbia.

107. Defendants are "covered employers" as defined in D.C. Code § 32-541.01(4).

108. Defendants employed or exercised control over the wages, hours, or working conditions of Plaintiff. Upon information and belief, Defendants are required to pay unemployment insurance on behalf of its employees.

109. The D.C. Paid Leave Act provides paid leave benefits of up to 12 weeks for any qualifying employee who takes leave, on or after October 1, 2022, in order to provide care or companionship to a family member because of the diagnosis or occurrence of a serious health condition. D.C. Code § 32–541.04(e-1)(3)(B).

110. On February 27, 2023, the District of Columbia Department of Employment Services that administers paid benefits pursuant to the DC Paid Leave Act determined that Plaintiff's employment at Axonius met the requirements for intermittent paid leave and awarded her the maximum benefit amount.

111. Defendants unlawfully interfered with, restrained, or denied Plaintiff's exercise of or her attempt to exercise her right to paid leave under the DC Paid Leave Act in violation of D.C. Code § 32-541.10(a) and 4 DCMR § 1701 by discouraging her from invoking her DC Paid

16

Leave Act rights and terminating her immediately upon notice of exercising her rights under the DC Paid Leave Act.

## COUNT SIX

### (Unlawful Retaliation in Violation of the DC Paid Leave Act)

112. Plaintiff realleges and incorporates by reference the preceding allegations.

113. Defendants unlawfully discharged Plaintiff in violation of D.C. Code § 32-541.10(b) when she exercised or attempted to exercise her right to take paid leave protected by the DC Paid Leave Act.

## COUNT SEVEN

### (Retaliation for Protected Complaints in Violation of DCHRA)

114. Plaintiff realleges and incorporates by reference the preceding allegations.

115. D.C. Code § 2-1402.61 prohibits retaliation against employees for engaging in statutorily protected activity, including complaints about sex discrimination or opposition to acts that are unlawful under the DCHRA.

116. Plaintiff complained to Defendants about discrimination on the basis of sex and opposed unlawful discrimination on the basis of sex. The complaints were statutorily protected activities.

117. After she complained about discrimination, Plaintiff was subjected to reprisal for her protected activity when she was terminated on February 14, 2023.

118. The retaliatory actions of Defendants as described herein constitute an intentional and continuing violation of D.C. Code § 2-1402.61.

119. The retaliation occurred in the District of Columbia and the effects of Defendants' retaliatory conduct were felt by Plaintiff in the District of Columbia.

120. By virtue of the foregoing treatment, Plaintiff was subjected to unlawful retaliation because of protected complaints against sex discrimination.

121. Defendants unlawfully retaliated against Plaintiff because she opposed unlawful discrimination and to punish and deter her from continuing to pursue her civil rights.

122. Defendants' actions toward Plaintiff were willful, wanton and malicious and/or committed with reckless disregard for her statutorily protected rights.

123. Defendants' actions have caused Plaintiff past and future pecuniary losses, physical pain, emotional distress, inconvenience, loss of enjoyment of life and humiliation, pain and suffering, embarrassment, inconvenience, and other non-economic damages.

124. Plaintiff is entitled to all relief available under the DCHRA, including but not limited to, reinstatement to her job under the same terms and conditions as existed prior to her termination, amounts sufficient to compensate her for unlawful pay disparities, back pay, front pay, compensatory and punitive damages, pre-judgment interest and attorney's fees.

## COUNT EIGHT

**(Willful and Intentional Violation of Federal Equal Pay Act, 29 U.S.C. Section 206(d))**

125. Plaintiff realleges and incorporates by reference the preceding allegations.

126. Since the beginning of her employment and continuously until she was promoted to Data Protection Counsel, Defendants intentionally paid Plaintiff less than the salary and benefits which they paid to male employees for equal work on jobs, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

127. Defendants' actions toward Plaintiff were willful and intentional.

128. Defendants' actions have caused Plaintiff past and future pecuniary losses.

129. Plaintiff is entitled to all relief available under the Equal Pay Act, 29 U.S.C. Section 216(b), including but not limited to, reinstatement to her job under the same terms and conditions as existed prior to her termination, back pay, front pay, liquidated damages, pre-judgment interest and attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court award the following relief:

(1) A judgment in favor of Plaintiff and against Defendants;

(2) Reinstatement;

(3) Front pay, including the value of lost benefits and lost stock options;

(4) Back pay, including the value of lost benefits and lost stock options;

(5) Liquidated damages;

(6) Compensatory damages for the pain, emotional distress, inconvenience, loss of enjoyment of life and humiliation, pain and suffering, embarrassment, inconvenience, and other non-economic damages and other losses she has suffered as a result of Defendants' unlawful actions, in an amount to be determined by the jury;

(7) Punitive damages against Defendants in an amount to be determined by the jury;

(8) Prejudgment and post-judgment interest;

(9) Tax gross-up;

(10) Reasonable attorneys' fees and the costs incurred;

(11) Any such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: June 22, 2023

    /s/ Olga M. Thall
Olga M. Thall  - D.C. Bar No. 1016248
Alice C. Hwang – D.C. Bar No. 1010190
JAMES & HOFFMAN, P.C.
1629 K Street, NW, Suite 1050
Washington, DC 20006
(202) 496-0500
(202) 496-0555 (fax)
omthall@jamhoff.com
achwang@jamhoff.com

*Attorneys for Plaintiff*